**97.** The significance of H-2024-00013 became even greater when Plaintiff sought review before the EEOC. Plaintiff submitted a Request for a Hearing identifying H-2024-00013 as the Agency Case Number and then Agency Assigning EEOC No. 540-2024-00261X as the EEOC proceeding. See; ( Plaintiff Exhibit Thirteen, request For a Hearing EEOC No. 540-2024-00261X). Plaintiff used the number the Agency had assigned to the matter because it was the case number she had been given for the complaint she had pursued. This fact is significant because it shows plaintiff beveled that engaging in the HART process was protected activity.

**98.** Plaintiff was not an EEO professional and had no reason to understand that the Agency could require her to use HART first, fail to develop the discrimination allegations through that process, and then later use the absence of those allegations to defeat an EEO proceeding. The Agency possessed the knowledge, personnel, procedures, and resources necessary to distinguish the two processes and to tell Plaintiff what additional EEO step was required. Plaintiff did not possess that institutional knowledge.

**99.** The Agency did not simply correct Plaintiff's use of H-2024-00013 when the matter reached the EEOC. Instead, the Agency participated in the EEOC proceeding under that number and filed a Motion to Dismiss on August 8, 2024, in EEOC No. 540-2024-00261X, Agency No. H-2024-00013. The Agency argued that Plaintiff had not initiated EEO counseling on time or filed a formal EEO complaint and further argued that the matter did not state an EEO claim because the HART allegations did not establish discrimination based upon a protected status. The Agency also characterized Plaintiff's case as an "impermissible collateral attack on the HART process," that they made her use first, AH was mandatory.

**100.** The result was a procedural contradiction created by the Agency's own handling of Plaintiff's complaint. The Agency had assigned H-2024-00013, Plaintiff used that number in seeking EEOC review, and the EEOC proceeding itself identified H-2024-00013 as the Agency Case Number. The

Agency then on August 8, 2024, relied upon the absence of a separately processed EEO complaint and the absence of protected status allegations in the HART inquiry to seek dismissal. See ( Plaintiff Exhibit Fourteen, Agency MTD 540-2024-00261X ). Plaintiff alleges that the Agency used the distinction between the two processes to place Plaintiff in a position where information generated through the mandatory HART process could be used against her while the absence of an independently developed EEO record was also used against her. The Agency has the HART file as and Exhibit to support their Motion to Dismiss. See ( Plaintiff Exhibit Fourteen, Agency MTD 540-2024-00261X ).

**101.** The Agency knew that Plaintiff's July 2024 Request for a Hearing was based upon HART Case No. H-2024-00013 and that no formal EEO complaint had been filed under that case number. The Agency nevertheless allowed the matter to proceed before an EEOC Administrative Judge under the HART case number rather than immediately advising Plaintiff that the matter was not an EEO complaint and that she needed to initiate the federal sector EEO process. Plaintiff alleges that this was not a mere clerical or administrative mistake. The Agency possessed the HART record, knew the difference between the HART process and the federal sector EEO process, and knew the procedural requirements governing a hearing before an EEOC Administrative Judge.

**`102.** The federal sector EEO regulations establish a defined sequence before an ordinary hearing request reaches an Administrative Judge. An aggrieved employee ordinarily must first contact an EEO Counselor within the applicable period. 29 C.F.R. § 1614.105(a)(1). During the counseling process, the Counselor must advise the employee in writing of the employee's rights and responsibilities, and, when counseling concludes, the Counselor must issue the notice required by § 1614.105(d), including notice of the right to file a discrimination complaint. 29 C.F.R. § 1614.105(b), (d). A formal complaint is then filed with the Agency pursuant to § 1614.106. The Agency must acknowledge the complaint and advise

the complainant regarding the investigation and the right to request a hearing. 29 C.F.R. § 1614.106(a), (b), (e).

**103.** The right to request an EEOC Administrative Judge ordinarily arises after the federal sector EEO complaint has entered the investigation and hearing process. Under 29 C.F.R. § 1614.108(f), after completion of the investigation the Agency provides the investigative file and notice of the right to request a hearing. Under § 1614.108(g) and (h), if the Agency has not completed the investigation within the applicable period, the Agency must provide the required notice concerning the incomplete investigation and the employee's right to request a hearing; after 180 days have elapsed from the filing of the complaint, the complainant may request a hearing even if the investigation remains incomplete. The EEOC likewise explains that a hearing request is ordinarily made after the investigation or after 180 days have elapsed on a formal EEO complaint. See EEOC, Management Directive 110, Chapter 7; 29 C.F.R. § 1614.108(h).

**104.** None of those ordinary federal sector EEO procedures existed for H-2024-00013 when Plaintiff submitted her July 2024 Request for a Hearing. H-2024-00013 was the case number assigned by the Agency to Plaintiff's HART matter. Plaintiff had not been provided an EEO Counselor's Notice of Rights for that matter, had not filed a formal EEO complaint under H-2024-00013, had not received an EEO investigation or Report of Investigation concerning that matter, and had not received the notice ordinarily associated with the right to request an EEOC hearing. Nevertheless, the Agency permitted Plaintiff's request to proceed before an Administrative Judge while using H-2024-00013 as the Agency Case Number. In order for this to occur, the agency who is responsible for administrating the EEOC complaint process, had to willfully violate numerous EEOC regulations.

**105.** The Agency's conduct became more significant when the EEOC proceeding was opened and the Agency was given the opportunity to correct the procedural problem. Rather than immediately

informing the EEOC and Plaintiff that H-2024-00013 was solely a HART matter and that there was no underlying formal EEO complaint, the Agency appeared in the proceeding and filed a Motion to Dismiss on August 8, 2024. The Agency only then argued that Plaintiff had failed to initiate EEO counseling and had failed to file a formal EEO complaint. The Agency therefore relied upon the very procedural defect that it had allowed to exist while Plaintiff's hearing request proceeded under the Agency assigned HART number, see: ( Plaintiff Exhibit Four, Hearing Request H-2024-00013). Plaintiff alleges that this sequence is evidence that the Agency knew the hearing request was procedurally defective yet permitted the matter to proceed to the point at which the defect could be used as the basis for dismissal, used against the Plaintiff. This is compounded by the fact that the HART investigation started in January 2024 and was not decided until July 2024. Plaintiff made the hearing request on July 17, 2024; the case was dismissed based on the HART issue by an EEOC Administrative Judge on September 9, 2024. Plaintiff made timely counselor contact on August 9, 2024, for ongoing harassment based on age and reprisal arising from a new July 16, 2024 incident. See: ( Plaintiffs Exhibit Three, 8/9/2024 Counselors Report ). Plaintiff was given her Notice of Rights to file a formal complaint on October 29, 2024, and within 15 days, Plaintiff filed her formal complaint. The case was dismissed on July 1, 2025 based on the HART issue, as a collateral attack on the September 9, 2024 decision. Plaintiff asserts that the Agency's actions sent her into a time consuming, 17 month administrative abyss, each procedural step became the basis for another dismissal rather than a merits determination. Plaintiff asserts, this would deter a reasonable person from filing a discrimination complaint against the Forest Service and would chill other employees from doing so.

**106.** The resulting delay was not harmless to Plaintiff. On August 9, 2024, one day after the Agency's Motion to Dismiss identified the absence of an EEO counseling and formal complaint process, Plaintiff contacted the Agency's EEO office. The subsequent Counselor Report identified July 16, 2024 as the

date of the alleged discriminatory event and August 30, 2024 as the forty fifth day. Plaintiff's August 9, 2024 EEO contact therefore occurred within the forty five day period identified in the Agency's own counseling record. Plaintiff alleges that the Agency's earlier failure to direct her into the EEO process, followed by its decision to allow the HART numbered hearing request to proceed and then seek dismissal based upon the absence of that EEO process, materially affected her ability to pursue her claims.

**107.** The Agency's conduct is further significant because the Agency was placed on notice that the EEOC proceeding required development of an appropriate record. On August 9, 2024, the EEOC Phoenix District Office issued a Notice of Intent to Sanction Agency in EEOC No. 540-2024-00261X and directed the Agency to provide the complaint file and Report of Investigation pursuant to 29 C.F.R. § 1614.108(h). The notice identified H-2024-00013 as the Agency Case Number. See: (Plaintiff Exhibit Twelve, Notice of Intent to Sanction). Plaintiff subsequently sought sanctions concerning the Agency's failure to provide the required record. The September 9, 2024 Administrative Judge's order reflects Plaintiff's request for sanctions and the Agency's position that no EEO complaint file existed because the matter was a HART proceeding. Plaintiff alleges that, by this point, the Agency was on actual notice of the procedural contradiction: the EEOC proceeding was being administered under the HART case number, the EEOC had directed production of the complaint file and investigative record, and the Agency simultaneously maintained that no EEO proceeding had ever existed.

**108.** The September 9, 2024 dismissal did not merely resolve a technical filing question. It left Plaintiff without the merits review that would ordinarily occur through the federal sector EEO process and without an EEO investigative record concerning the harassment and reprisal allegations she was attempting to pursue. Plaintiff alleges that the sequence of events supports a strong inference that the Agency knowingly permitted a procedurally defective matter to proceed before an Administrative

Judge, despite having the knowledge necessary to identify and correct the defect, and then used the resulting procedural deficiency to obtain dismissal. The circumstances are relevant to motive and pretext because the Agency's conduct did not operate simply as an accidental routing error: the Agency assigned the HART number, Violated numerous EEOC regulations when allowing a hearing with out a formal complaint being filed, no investigation occurred, participated in the EEOC proceeding under the HART number, defended the proceeding by asserting that the HART number did not represent an EEO complaint, and then benefited from the dismissal that followed from the absence of the EEO process the Agency had failed to initiate or clearly direct Plaintiff to pursue. Plaintiff alleges that the prolonged HART process, the failure to transition Plaintiff into the EEO process, the use of the HART number in the EEOC proceeding, the EEOC's directive to produce the investigative record, Plaintiff's request for sanctions, and the Agency's subsequent reliance upon the resulting dismissal collectively form part of the continuing retaliatory environment and support an inference of motive and pretext.

**109.** The Agency's own June 24, 2026 explanation makes this contradiction significant. Deputy Director Zimmerman stated that HART is a separate process and specifically stated that HART investigations, findings, and documents are not part of the federal sector EEO record. See: (Plaintiff Exhibit One A, Zimmerman Email, AH is Mandatory). The actual record in Plaintiff's case, however, contains the HART Inquiry Report H-2024-00013 within the ROI for FS-2024-00693. Plaintiff alleges that the Agency's later explanation therefore does not correspond with the manner in which the Agency actually handled Plaintiff's HART record.

**110.** The Agency's treatment of the HART record is also relevant to motive and pretext. The Agency has relied upon the separation between HART and EEO when arguing that Plaintiff's HART matter did not constitute an EEO complaint, while the Agency's own later EEO investigative record contains the HART Inquiry Report. The Agency has therefore treated the HART matter as separate when that

distinction supports dismissal of the case, while the HART investigative material was nevertheless incorporated into the EEO record. Plaintiff alleges that this inconsistent treatment is evidence from which motive and pretext may be inferred.

**111.** The resulting harm was not merely technical. Because the HART process did not investigate whether Plaintiff had been subjected to age discrimination or reprisal, but it was mandatory. The process was a statement gathering procedure and nothing more, Hart did not even make a decision over the issues, no EEO investigative record was developed addressing those claims. Because Plaintiff was not provided the ordinary EEO notices, she was not placed on notice of the procedural steps the Agency later claimed she should have taken. Because the Agency nevertheless permitted the HART number to be used in the EEOC proceeding, Plaintiff was led to believe that the matter had entered the EEOC process. And because the Agency later relied upon the absence of the very EEO process it had failed to initiate, Plaintiff was placed in a procedural position that the Agency itself had created. It was the Agency's actions that led Plaintiff to believe that HART was protected activity.

**112.** Plaintiff alleges that the Agency's use of its institutional knowledge and resources in this manner was reasonably likely to deter a reasonable employee from opposing discrimination. An employee who follows a mandatory Agency harassment reporting process, is not told that a separate EEO process must also be initiated, later sees the Agency's own case number used to obtain an EEOC Administrative Judge, and then learns that the Agency will rely upon the absence of a formal EEO complaint and investigation to defeat the claim could reasonably conclude that continuing to oppose or report discrimination is futile or dangerous. This deterrent effect is part of the retaliatory environment alleged in this Complaint. Plaintiff asserts that HART does not have to be protected activity. Plaintiff asserts that fact that she requested a hearing before an EEOC administrative Judge based on H-2024-00013 is objective proof that she believed it was and that she believed, she was opposing discrimination. As the

Deputy Director pointed out HART is mandatory and comes first. Agency includes their HART investigation reports in their EEOC investigative files. Administrative Judge Katherine Kruse Assumed subject matter jurisdiction over a HART investigation on September 9, 2024, Her order granting dismissal of the case references Agency No. H-2024-00013, and no formal EEOC complaint was filed by Plaintiff, see: ( Plaintiffs Exhibit Sixteen, Dismissal of case H-2024-00013 by the EEOC ).

**113.** The problem was compounded by the Agency's control over the investigative record. The Agency possessed the HART file and relied upon the underlying HART matter in the EEOC proceeding, while Plaintiff and her representative sought the investigative materials and were not provided the complete record through the ordinary course of the proceeding.

**114.** On August 9, 2024, the EEOC Phoenix District Office issued a Notice of Intent to Sanction in EEOC No. 540-2024-00261X and directed the Agency to upload the complaint file and Report of Investigation within 15 days pursuant to 29 C.F.R. § 1614.108(h). The notice identified H-2024-00013 as the Agency case number. See: ( Plaintiff Exhibit Twelve, Notice To Sanction ). The Commission's directive demonstrates that the EEOC proceeding was being administered under the same Agency case identifier Plaintiff had been given for the HART matter.

**115.** The Agency did not provide Plaintiff with the required Report of Investigation. In this case the HART file that Agency will use to support their motion to dismiss filed on 8/82024, see: ( Plaintiff Exhibit Fourteen, Agency MTD 540-2024-00261X ). Plaintiff therefore never received the EEO investigative record that would ordinarily permit her to understand and challenge the evidence developed concerning her allegations. The Agency, however, continued to rely upon the absence of a properly developed EEO complaint as a basis for dismissal.

**116.** On September 9, 2024, the Administrative Judge dismissed the proceeding after considering the Agency's position that Plaintiff had not initiated the EEO process. The dismissal left Plaintiff in the

position created by the Agency's own routing and procedural handling: the HART process had investigated the workplace allegations without developing the age discrimination and reprisal allegations, while the Agency then relied upon the absence of those allegations and the absence of a separate formal EEO complaint to defeat the EEOC proceeding. Plaintiff asserts that a HART investigation that is supposed to determine weather or not discrimination occurred and refer Plaintiff to the EEOC should at the least ask if it discrimination was a factor for her report, the Agency did not.

**117.** Plaintiff's use of HART was part of her effort to oppose the conduct she reasonably believed was unlawful. She was not making a neutral workplace complaint divorced from discrimination. She was reporting conduct that, based upon her age, her treatment as the oldest employee in the group, her prior EEO experience, and the circumstances surrounding the conduct, she reasonably and in good faith believed constituted unlawful discrimination and harassment. Plaintiff filed; EEOC case, 540-2024-00261X, 540-2025-00189X, 833-2026-00328X, Plaintiff filed Amendment to Complaint 833-2026-00328X, on 2/25/2026. Plaintiff filed EEOC Appeal: 2025003707 for case 540-2025-00189X, and Appeal: 2025003707 for Agency case; FS-2024-00693 request for reconsideration.

**118.** Plaintiff's belief was reinforced by the fact that she had already gone through the EEO process in 2023 concerning age discrimination. She knew that age was an issue in the workplace because it was the subject of her prior EEO complaint. When the same management structure remained involved and Plaintiff experienced additional adverse treatment after that protected activity, she reasonably understood the subsequent conduct as retaliation and continuing harassment connected to her prior EEO activity.

**119.** On June 17, 2025, Plaintiff filed a Formal Complaint of discrimination for harassment based on reprisal, Agency Case No. FS-2025-00372. Plaintiff subsequently requested a hearing before an EEOC Administrative Judge, and the matter was assigned EEOC No. 833-2026-00328X. On February 25,

2026, Plaintiff filed a Motion to Amend that proceeding to include, among other matters, what she identified as the "fabricated HART process," including the allegation that there was no HART investigation and that the investigator did not interview Responding Management Officials Mollet or Branton. Plaintiff also expressly alleged that her use of the HART process constituted protected opposition activity under Title VII. See: (Plaintiff Exhibit Ten, Motion to Amend, EEOC No. 833-2026-00328X).

**120.** Plaintiff's opposition was based upon a reasonable and good faith belief. She was not required to correctly identify the legal theory, select the correct Agency office, or anticipate that the Agency would later characterize the matter as exclusively an Anti Harassment matter. She was a lay employee reporting conduct through the process the Agency required her to use. The Agency's later June 24, 2026 statement that AH is mandatory reinforces why Plaintiff reasonably understood that reporting harassment through that mechanism was the required means of reporting the conduct to the Agency.

**121.** The HART inquiry was conducted by the AR Group. The record reflects that Debra Mollet, the management official whose conduct was reported, did not participate in the scheduled March 13 interview and did not respond to subsequent follow up efforts. The inquiry nevertheless proceeded for s period of 6 mouths without her participation. Plaintiff's February 25, 2026 Motion to Amend further alleges that "NO investigator interviewed the Responding Management Official Mollet Or Branton." See: (Plaintiff Exhibit Ten, Motion to Amend, EEOC No. 833-2026-00328X, p. 10, ¶ 9A).

**122.** The HART disposition was personally issued by Nicole Branton, Plaintiff's second level supervisor and the Forest Supervisor. On July 16, 2024, Branton informed Plaintiff that the allegations had not been corroborated and that the conduct could not be confirmed as harassment. The Counselor Report identifies Branton as the Responsible Management Official and as Plaintiff's second level supervisor. Plaintiff's Motion to Amend further alleges that "The Responding Management Official

Controlled the Outcome." See: (Plaintiff Exhibit Ten, Motion to Amend, EEOC No. 833-2026-00328X, p. 10, ¶ 9B). Plaintiff asserts that 2024 HART process was a sham.

**123.** This structure is significant to Plaintiff's retaliatory harassment claim. Debra Mollet, the management official whose conduct was reported in the 2024 HART matter, did not participate in the HART inquiry, while Nicole Branton, who was Mollet's supervisor and Plaintiff's second level supervisor, was permitted to make the dispositive HART determination that ended the matter. Branton was also identified as an RMO in the 2024 EEO matter. Plaintiff alleges that this structure, together with Branton's prior connection to Plaintiff's 2023 EEO activity and the Agency's later treatment of the HART record, is evidence bearing on nexus, motive, pretext, and the retaliatory nature of the HART disposition. See: This issue was raised in front of Administrative Judge on 2/25/2026, see; (Plaintiff Exhibit Ten, Motion to Amend, EEOC No. 833-2026-00328X, p. 10, ¶ 9C). The Judge denied the motion on April 16, 2026. Plaintive filed a written objection to the Judges ruling to preserve her rights, see; ( Plaintiffs Exhibit Ten C ).

**124.** Plaintiff and her representative continued attempting to obtain the HART investigative record because the record was necessary to understand what had been investigated, what evidence had been considered, and how the Agency had reached its disposition. Those efforts were also part of Plaintiff's continuing effort to oppose and obtain redress for conduct she believed was unlawful.

**125.** When Plaintiff's representative for the 2024 EEOC case, sought the HART investigative materials, the Agency directed him to the FOIA process. See: (Plaintiff Exhibit Nine). Plaintiff and her representative followed that direction because the Agency had placed the HART record at issue.

**126.** The Agency ultimately responded by providing approximately 200 pages of blank documents rather than the substantive investigative record sought. Plaintiff alleges that this conduct further obstructed her ability to obtain the evidence concerning her allegations and contributed to the chilling effect of the Agency's treatment of her protected activity. See: (Plaintiff Exhibit Ten, Motion to Amend, EEOC No. 833-2026-00328X, p. 11, ¶ 9F; also see; (Plaintiffs Exhibit 10A ), written objection page 3. ¶ 9, 11, page 5 ¶¶ 22,23. see; ( Plaintiff Exhibits Ten A-D, 200, FOIA Blank Documents).

**127.** At the same time, the Agency had failed to provide the Report of Investigation associated with the EEOC proceeding identified as EEOC No. 540-2024-00261X. That record was necessary to Plaintiff's ability to understand and oppose the Agency's position before the Administrative Judge. See: (Plaintiff Exhibit Eleven, Request for Reconsideration, Hearing No. 540-2025-00189X, filed January 7, 2026, Appeal No. 2025003707, p. 1, ¶¶ 1-2; p. 2, ¶ 3, addressing equitable tolling where Agency conduct misleads or prevents timely EEO contact).

**128.** The EEOC's August 9, 2024 Notice of Intent to Sanction specifically directed the Agency to upload the complaint file and Report of Investigation within 15 days pursuant to 29 C.F.R. § 1614.108(h). See: (Plaintiff Exhibit Twelve, Notice of Intent to Sanction). The Agency did not produce the required ROI. Plaintiff never received the investigative record that the EEOC had directed the Agency to provide.

**129.** The Agency nevertheless continued to rely upon the procedural absence of a formal EEO complaint and the absence of protected status allegations in HART to obtain dismissal. Plaintiff alleges that the Agency's control over the routing, investigation, records, and procedural information placed a lay employee at a substantial disadvantage in attempting to oppose the conduct and pursue her EEO rights.

**130.** Plaintiff subsequently continued pursuing EEO remedies concerning the conduct arising from HART. Those proceedings were not unrelated new disputes. They were further efforts to oppose, report, and obtain redress for conduct that had followed her protected 2023 EEO activity.

**131.** Plaintiff does not contend that HART itself is unlawful merely because it is an Anti Harassment program. Her claim is that the Agency's use and handling of HART, in the circumstances of this case, became part of the continuing retaliatory harassment and interference directed at her because she had engaged in protected EEO activity and continued opposing what she reasonably believed to be unlawful discrimination. The Agency's own June 24, 2026 statement confirms that the Agency regards reporting harassment through AH/HART as mandatory. Plaintiff alleges that the Agency cannot use a process it required her to follow as a basis for denying her the evidence and procedural development necessary to pursue the very rights she was attempting to exercise.

**132.** Plaintiff was frightened by what was occurring and by the consequences of continuing to challenge management conduct. She frequently cried after returning home from work. The emotional impact was not merely subjective dissatisfaction with an administrative decision. It was part of the effect the continuing conduct had upon Plaintiff and is evidence of the hostile and intimidating environment created by the Agency's treatment of her.

**133.** The HART events therefore form part of the hostile work environment and reprisal claim because they were connected to Plaintiff's protected activity, occurred in the same employment relationship, involved the same management structure, and contributed to the cumulative intimidation, obstruction, and interference that Plaintiff experienced. The HART events are pleaded as part of the retaliatory environment, not merely as an independent challenge to the Agency's Anti-Harassment program.

**134.** The Agency's conduct was also reasonably likely to deter a reasonable employee from engaging in protected activity because the Agency did not, in practice, treat information generated through

HART as wholly separate from the EEO process in Plaintiff's case. The HART file and HART generated materials concerning the 2024 allegations appear in the Report of Investigation for Agency Case No. FS-2024-00693. 222 This is significant because Deputy Director Zimmerman later stated that HART investigations, findings, and documents were not part of the federal sector EEO record because HART is handled through a separate process. See: (Plaintiff Exhibit One A, Zimmerman Email, AH is Mandatory). Plaintiff alleges that the actual inclusion of the HART investigative material in the EEO ROI is inconsistent with the Agency's stated position and is evidence bearing upon motive and pretext.

**135.** The same HART matter was also placed directly before the EEOC in the earlier proceeding, EEOC No. 540-2024-00261X, Agency No. H-2024-00013. On August 8, 2024, the Agency filed its Motion to Dismiss in that proceeding, relying upon the fact that H-2024-00013 was a HART matter and arguing that Plaintiff had not initiated EEO counseling or filed a formal EEO complaint. On September 9, 2024, Administrative Judge Kruse granted the Agency's motion and dismissed EEOC No. 540-2024-00261X. The Agency later relied upon that HART based proceeding and dismissal in seeking dismissal of FS-2024-00693. On May 23, 2025, the Agency filed its Motion to Dismiss in EEOC No. 540-2025-00189X / Agency No. FS-2024-00693, relying upon the prior HART proceeding and the September 9, 2024 dismissal in support of its position that Plaintiff's subsequent EEO claims were untimely and subject to issue preclusion. See; ( Plaintiff Exhibit Eighteen, 540-2025-00189X / Agency No. FS-2024-00693 ). On July 1, 2025, Administrative Judge Rachele Dawson granted that motion and dismissed the FS-2024-00693 proceeding, relying upon the prior September 9, 2024 dismissal and treating the issue of Plaintiff's EEO contact as previously adjudicated under HART H-2024-00013. See: (Plaintiff Exhibit Seventeen, Second Case Dismissal Based on Hart, 540-2025-00189X / Agency No. FS-2024-00693, July 1, 2025).

**136.** Plaintiff therefore alleges that the Agency's conduct constituted reprisal and retaliatory harassment because of her protected EEO activity beginning in 2023 and because she continued to oppose and seek redress for conduct she reasonably and in good faith believed was unlawful. The reprisal claim does not require Plaintiff to establish that every subsequent act was itself discrimination because of age. Her prior EEO activity supplies the protected activity for the reprisal claim.

**137.** The age discrimination context remains relevant because it explains why Plaintiff reasonably believed she was opposing unlawful discrimination and why the subsequent conduct was experienced as retaliation. Plaintiff was the oldest employee in the group, had previously complained of age discrimination, and thereafter experienced additional conduct by management that she reasonably understood as connected to that history.

**138.** The Agency's handling of HART also provides evidence bearing upon motive and pretext. The Agency possessed the resources and expertise to distinguish HART from EEO, understood the significance of Plaintiff's prior EEO activity, controlled the routing and investigation of her report, controlled the resulting records, and later relied upon the procedural consequences of that routing. The Agency's own June 24, 2026 explanation further states that HART investigative documents are not part of the federal sector EEO record, while Plaintiff's FS-2024-00693 ROI contains the HART Inquiry Report. Plaintiff alleges that this inconsistency, together with the Agency's use of the HART matter in EEOC proceedings, is evidence that the Agency's treatment of the HART process was not a neutral sequence of unrelated administrative events.

**139.** Plaintiff accordingly alleges a continuing course of retaliatory harassment and interference rather than isolated administrative errors. The 2023 EEO complaint is the baseline protected activity. The subsequent HART routing, the Agency's mandatory reporting structure, failure to develop the discrimination and reprisal allegations, Branton's disposition, withholding of investigative materials,

use of H-2024-00013 in the EEOC proceeding, failure to develop the required ROI, incorporation of HART material into the later EEO record, and later reliance upon those procedural deficiencies all form part of the factual circumstances through which the Agency continued to retaliate against and deter Plaintiff from exercising her EEO rights. Agency conduct would deter a reasonable person required to report harassment by a Supervisor from doing so.

**140.** Plaintiff's allegations are therefore properly understood as a continuing retaliatory course of conduct combined with additional allegations that follow in this complaint. Each component is relevant not merely standing alone but as part of the totality of circumstances demonstrating the Agency's response to Plaintiff's protected activity, her continued opposition to conduct she reasonably believed was unlawful, and the resulting chilling and interference with her ability to pursue those rights.

**141.** The HART history is particularly relevant because the Agency's own June 24, 2026 explanation states that HART is a separate process and that HART investigations, findings, and documents are not part of the federal sector EEO record, while the Agency's actual EEO investigative record in Plaintiff's case contains HART investigative material. Plaintiff alleges that this contradiction, together with the Agency's use of the HART matter in EEOC proceedings and its reliance upon the HART based dismissal, forms part of the same retaliatory environment and is relevant to whether the Agency's stated explanations are credible.

## CONTINUING RETALIATION, SELECTIVE SCRUTINY, INTERFERENCE WITH EEO PARTICIPATION, AND ESCALATION IN 2025 2026

**142.** The central issue in Plaintiff's retaliatory hostile work environment claim is that the Agency received notice of the harassment and nevertheless failed to take prompt and effective corrective

action reasonably calculated to end the harassment and prevent its recurrence. The Agency did not take effective action directed at stopping the conduct after Plaintiff reported it; instead, the conduct continued and escalated. Under Ninth Circuit law, once an employer knows or should know of harassment, it has a duty to take prompt corrective action reasonably calculated to end the harassment and deter future harassment. *Fuller v. City of Oakland*, 47 F.3d 1522, 1528–29 (9th Cir. 1995); *Swenson v. Potter*, 271 F.3d 1184, 1192–93 (9th Cir. 2001). The adequacy of the Agency's response therefore goes directly to the merits of Plaintiff's hostile work environment claim and to whether the Agency may be held liable for the harassment that continued after notice. Where no effective remedy is undertaken, or the measures undertaken are ineffectual, the Ninth Circuit recognizes that liability may attach. *Fuller*, 47 F.3d at 1529.

**143.** By the beginning of 2025, Plaintiff had engaged in repeated protected EEO activity concerning discrimination, harassment, and retaliation, including EEO activity dating back to 2023. Plaintiff made contact with USDA and the Forest Service's Informal Complaints Management Staff regarding issues she believed to be discrimination, ROI 000028. The Agency's own investigative record confirms that Plaintiff had prior EEO activity and that Defendant Nicole Branton was aware of that activity, including Plaintiff's March 2023 harassment reporting and subsequent EEO counseling. Branton was also notified of the then current EEO complaint in January 2025. (ROI Bates Nos. 000007-000008, Ex. 9.) Plaintiff incorporates by reference all prior sections of this Complaint, including the 2023 and 2024 protected EEO activity, because the retaliatory conduct that began in 2025, should be evaluated in the cumulative context of management's continuing knowledge of Plaintiff's protected activity and the escalating pattern of scrutiny already underway.

**144.** Defendant Debra Mollet likewise acknowledged that she was aware of Plaintiff's prior EEO activity, including the EEO complaint arising from Plaintiff's dealings with former supervisor

Nora McArdle in March 2023, when McArdle attacked the Plaintiffs job reputation by raising false allegations against Plaintiff, this attack had adverse lasting effect on the plaintiff. Plaintiff filed a complaint of discrimination in 2023, Agency case; FS-2024-00693 ), The Plaintiff received her of notice rights to file a formal complaint but did not do so, out of fear, of McArdle's retaliatory nature and managements turning a blind eye to it. The Agency's 2025 investigative record identifies Mollet as District Ranger and Branton as Forest Supervisor, and establishes their supervisory positions in relation to Plaintiff. (ROI Bates Nos. 000007-000008 ).

**145.** The record shows a distinct change in management's treatment of Plaintiff once Plaintiff began requesting and using official time to engage in protected EEO activity. Before Plaintiff's EEO participation became the subject of management action, the record does not show a comparable pattern of Mollet scrutinizing Plaintiff's lunch, whereabouts, timekeeping, EEO time coding, or using subordinate employees to obtain information concerning her activities. Once Plaintiff began requesting and using time for EEO participation, however, management's treatment changed sharply. The first documented EEO specific timekeeping action occurred on March 25, 2025, when Mollet rejected Plaintiff's time and expressly stated that she did not have authority to authorize Plaintiff to "telework for EEO documentation." Thereafter, the scrutiny expanded into an office only directive concerning EEO work, repeated disputes concerning EEO time and coding, heightened scrutiny of Plaintiff's workplace presence and timekeeping, and inquiries concerning Plaintiff made through subordinate employees. Plaintiff Requested (ROI Bates No. 000145, Ex. 8, p. 74; ROI Bates Nos. 000172-000175, Ex. 12; ROI Bates Nos. 000248–000250, Ex. 19.) Plaintiff alleges that this chronology is significant because her protected activity included both participation in the EEO process and opposition to conduct she reasonably and in good faith believed to constitute unlawful discrimination, harassment, or

retaliation. The subsequent conduct therefore must be considered in the full context of both the opposition and participation clauses of Title VII's anti retaliation provision. Plaintiff Requested Official time for a EEOC matter that required her attendance on April 28, 2025 by email to RMO Mollet, ROI 000119, this was for contact with the EEOC counselor on April 29, 2025, Complaint Number: FS-2025-00372, ROI 000028, ¶ 1. Debra Mollet responded the same day by email, invoking a teleworking requirement that does not exsist for EEOC official time, ROI 000118.

**146.** Plaintiff does not allege that every time keeping action taken against another employee was unlawful, as they are not similarly situated. The record reflects that Mollet also rejected the times sheet of Caren Cassidy that same morning for "Inaccurate reporting of time." (ROI Bates Number. 000131, Ex. 8, p. 60.), Caren Cassidy is not a supervisor. Plaintiff's claim instead concerns the heightened scrutiny, circumstances, and pattern in which Plaintiff was monitored, questioned through subordinate employees, and subjected to adverse treatment after engaging in protected EEO activity. Shelly is a supervisor, Caren Cassidy is her subordinate.

**147.** The March 13 incident was followed by additional conduct specifically connected to Plaintiff's EEO activity. On April 14, 2025, Mollet directed Plaintiff that she must perform work associated with her EEO complaint from the office. The Agency's own inquiry identifies this as Incident No. 2 in the complaint. (ROI Bates Nos. 000020-000021, Ex. 2.)

**148.** Plaintiff had informed management that she had spent substantial personal time reviewing and working on an EEO matter and requested time associated with that participation. Plaintiff's April 2025 submissions reflect that she was attempting to obtain appropriate time to participate in the EEO process and was not attempting to obtain a personal workplace benefit unrelated to that protected activity. The agency does not have a must work in the office policy for EEOC

complaints where Plaintiff must be under supervision, in this case under the supervision of RMO Mollet. (ROI Bates Nos. 000172-000174, Ex. 12.)

**149.** Plaintiff's April 28, 2025 email to Mollet notified her of another EEO meeting scheduled for April 30, 2025 and stated that Plaintiff would be away from approximately 12:00 p.m. to 2:30 p.m. for EEO matters. Plaintiff did not request to "telework" in that communication. (ROI Bates Nos. 000172-000174, Ex. 12; ROI Ex. 8, Mollet affidavit and attachments.)

**150.** Rather, the April 28 communication identified the reason for the requested absence as EEO participation. The record reflects that Plaintiff expressly requested that any denial or restriction be put in writing because of the EEO nature of the activity. (ROI Bates Nos. 000172-000174, Ex. 12.)

**151.** Mollet nevertheless responded on April 29, 2025 by re-framing Plaintiff's request as one involving "telework," stating that she had checked with leadership and EEO contacts and had not found guidance exempting EEO activities from the new telework policy. Mollet also requested that Plaintiff identify contrary authority in her time sheet remarks. (ROI Bates Nos. 000248-000250, Ex. 19; ROI Ex. 8, Mollet affidavit.)

**152.** The distinction is significant because Plaintiff's contemporaneous April 28 communication concerned participation in an EEO matter, while the "telework" terminology was introduced by Mollet in the response. Plaintiff's representative by email, then specifically asked Mollet to identify the agency policy, rule, or regulation supporting an "office only" directive for EEO participation. (ROI Bates Nos. 000248-000249, Ex. 19.)

**153.** The April 3, 2025 email from Plaintiff's representative to Mollet, copied to Plaintiff and Branton, similarly requested the specific policy supporting Mollet's asserted "work from the office only" requirement. The email expressly stated that Plaintiff's representative understood

Mollet to have directed Plaintiff that EEO case work had to be performed from the office. (ROI Bates Nos. 000248-000249, Ex. 19.)

**154.** Plaintiff's contemporaneous rebuttal further reflects that Mollet did not identify a policy specifically stating that EEO participation had to occur "from the office only." Plaintiff also documented that when she later asked Mollet on May 5, 2025, "how to code time?" for an EEO meeting, Mollet did not respond. (ROI Bates Nos. 000172-000175, Ex. 12.)

**155.** The record therefore contains contemporaneous evidence of a dispute over what Plaintiff actually requested, what policy purportedly governed the request, and whether the restriction imposed by Mollet was supported by any identified directive. Plaintiff alleges that this sequence was pretextual and was used to burden and complicate her participation in the EEO process after management knew she was actively pursuing EEO claims. Plaintiff asserts that Mollets dishonesty is not just indicative of pretext, it demonstrates the hostile environment Plaintiff had to work in.

**156.** Most importantly, the Agency's own OPM Form 71 ultimately reflects that Plaintiff was approved for April 30, 2025 from 12:00 p.m. to 2:30 p.m. for "EEO PARTICIPATION." The form further states: "Leave is approved. Ms. George has also been approved for working on EEO participation during work hours if she chooses." (ROI Bates No. 000174, Ex. 12, p. 4.). The fact that she could use leave to work on EEOC matters clearly shows she did not have to work on these matters in the office under the supervision of Mollet.

**157.** That contemporaneous Agency record substantially confirms that the underlying activity was EEO participation and not simply ordinary telework. It also demonstrates that Plaintiff's requested time ultimately was approved as EEO participation during work hours, undermining any suggestion that the activity itself was illegitimate or unrelated to her employment rights. (ROI Bates No. 000174, Ex. 12.),

**158.** Plaintiff further alleges that the April 29 sequence caused her to submit an Annual Leave request for the same EEO related period after Mollet had directed her to address the matter through the office/telework framework. Plaintiff's April 29, 2025 submission documenting that request was sent to both Mollet and Branton. (ROI Bates Nos. 000174-000175, Ex. 12.)

**159.** Branton therefore was not unaware that the dispute concerned EEO participation. She was copied on Plaintiff's April 28 email requesting to be away from the office from approximately 12:00 p.m. to 2:30 p.m. for EEO matters, and Plaintiff's April 29 communication again placed Branton on notice of the issue. (ROI Ex. 8, Branton affidavit; ROI Bates Nos. 000172-000175, Ex. 12.)

**160.** Plaintiff alleges that the April 14, April 28, and April 29 events were not isolated administrative misunderstandings but part of a continuing course of conduct in which management imposed heightened restrictions on Plaintiff's EEO participation, required additional explanations concerning her participation, and repeatedly recast EEO activity as a workplace attendance or telework issue. *See Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 69 (2006) ("Context matters.").

**161.** The timing is further significant because the Agency had already been placed on notice of Plaintiff's protected activity and because Mollet herself acknowledged that she had reviewed EEO related documentation concerning Plaintiff. The ROI records that Mollet became aware of the current complaint through the EEO documentation and that she was aware of Plaintiff's prior EEO activity. (ROI Bates Nos. 000007-000008, Ex. 8.)

**162.** The same escalation appeared in Plaintiff's timekeeping. On March 25, 2025, Mollet rejected Plaintiff's time sheet and specifically stated that she lacked authority to authorize Plaintiff to "telework for EEO documentation," referring to Plaintiff's EEO related work. (ROI Bates No. 000145, Ex. 8, p. 74; duplicate at ROI Bates No. 000277.)

**163.** On April 21, 2025, Mollet again rejected Plaintiff's time sheet for Pay Period 7, giving the stated reason: "Inaccurate reporting of time." The rejection was made on the morning following the April 16 going away luncheon for a coworker and related timekeeping dispute. (ROI Bates No. 000129, Ex. 8, p. 58.)

**163A.** On April 14, 2025, two days before the April 16 lunch event, Plaintiff notified Molllet that she needed official time to prepare paperwork and meet with EEO, as reflected in the contemporaneous Teams communication stating: "I will contact HR to obtain information on getting time to prepare paperwork and meeting with EEO." (Plaintiff's Exhibit 23A.), also see; ROI 000138-139. This is when Mollet suggested the one hour lunch. Plaintiff alleges that this request marks the beginning of the documented 2025 EEO participation period and that the heightened scrutiny of her attendance, whereabouts, and timekeeping began only after management became aware that she was actively seeking official time for EEO participation. The timing is significant because it demonstrates that the April 16 lunch incident occurred *after* Plaintiff engaged in protected EEO activity. On April 14, 2025 Mollet denies Plaintiffs request for official time for EEOC legal Matters and suggest plaintiff use her credit hours, See; Email evidence ROI 000139. By Email on April 21,2025, Mollet denies Plaintiffs time for the 16th lunch; "The reason given for declining to approve is: Inaccurate reporting of time". See; ROI 000129.

**164.** The April 16, 2025 going away luncheon is important because Plaintiff did not simply leave the workplace without authorization. Plaintiff's contemporaneous Teams exchange with Mollet reflects that Plaintiff advised Mollet that Lori's last day was that day, stated that she and Gia wanted to attend the luncheon, advised that Lisa had been asked to provide front desk coverage, and asked Mollet whether this was acceptable. Mollet responded at approximately 10:04 a.m., "That is fine will you be gone for an hour?" (Exhibit: April 16, 2025 Teams communication.)

**165.** The contemporaneous communication therefore provides direct evidence that Plaintiff obtained advance permission to attend the luncheon and that management understood the proposed absence to be approximately one hour. Plaintiff also arranged for front desk coverage before leaving. (Exhibit: April 16, 2025 Teams communication; ROI Bates Nos. 000174-000175,). Plaintiff was the only Supervisor that needed permission from Mollet to attend the gowning away lunch, Supervisor Joseph Dahms and Others did not, see: ( Plaintiff Exhibit 26, Supervisor Joseph Dahms 10:48 Teams Message To Plaintiff ).

**166.** Mollet's own affidavit substantially confirms this account. Mollet states that Plaintiff sought permission for herself and her direct report to attend the going away party, that Plaintiff had secured someone to cover the front desk, and that Mollet told them they could go. Mollet further states that she later saw Plaintiff and others returning from lunch at approximately 1:20 p.m. (ROI Bates Nos. 000010-000011, Ex. 8.). The April 16, 2025 Teams communication further demonstrates that the one hour lunch period was not requested by Plaintiff but was suggested by Mollet herself, see: (Plaintiff's Exhibit 23A, Mollet Suggesting One Hour Lunch).

**167.** Plaintiff alleges that the April 16 event was therefore not an unauthorized departure. The question became one of time keeping after Plaintiff returned from an absence for which she had obtained prior permission and arranged coverage.

**168.** The Agency's own records also demonstrate that one hour lunch periods occurred within the work unit. A time and attendance record contained in the ROI states: "Lunch for Lori R, it was 1200 to 1300. Used AL for 30min." (ROI Bates No. 000137.) The record "Remarks" establishes that a one hour lunch was in fact used by another employee and that only thirty minutes was charged to annual leave. Lori R, Lori Renolds was not a supervisor.

**169.** Plaintiff does not plead that the foregoing record, standing alone, proves that every employee was legally entitled to convert rest breaks into a longer meal period. Plaintiff pleads

the evidence for the narrower and more significant point: one hour lunch periods occurred within the work unit, management permitted employees to use flexible scheduling, and Plaintiff was expressly permitted to attend the April 16 luncheon so long as operational coverage was maintained. (ROI Bates Nos. 000137 and 000180, Ex. 12.) a;so see: ( Plaintiffs Exhibit 23, Evidence, Agency Special Occasion Lunch Breaks for supervisors lasting an hour.

**170.** The disparity lies not merely in the length of Plaintiff's lunch but in what management did afterward. Instead of addressing any purported concern directly with Plaintiff when she returned, Mollet obtained information regarding Plaintiff's whereabouts through a subordinate front desk employee and thereafter used the incident as a basis for scrutiny of Plaintiff's timekeeping. Plaintiff alleges that this treatment was materially different from the ordinary flexibility afforded to others and was undertaken in the context of her existing EEO activity.

**171.** On or about April 17, 2025, Mollet questioned Lisa Bighorse, a subordinate employee assigned to front desk coverage, concerning when Plaintiff had returned from lunch. The Agency's investigation identifies Bighorse as the employee involved and records that Mollet made the inquiry. (ROI Bates Nos. 000010-000012, Ex. 8; ROI Bates No. 000163, Ex. 10.) Bighorese admits that Mollet asked her about plaintiff, Mollet will deny she did, ROI 000023 ¶ 3. Plaintiff asserts the consistent dishonesty by Mollet demonstrates the hostility of the environment.

**172.** The organizational relationship is material. The ROI identifies Bighorse as a GS-9 Forester and states that she assisted with front desk coverage, while the record separately identifies Plaintiff as an Administrative Support Assistant whose position involved supervisory responsibilities. The Agency's own materials identify Plaintiff as a supervisor of Cassidy, and Plaintiff's supervisory role was part of the established organizational structure. (ROI Bates Nos. 000006-000008; ROI Bates Nos. 000163 and 000166.)

**173.** Mollet's decision to obtain information about Plaintiff's whereabouts through a subordinate employee, After she had already approved the front desk coverage herself, rather than simply addressing Plaintiff directly, is significant in the context of the existing relationship between Plaintiff and management. Plaintiff alleges that the use of subordinate employees to monitor or report on a supervisor's whereabouts was intimidating and degrading, particularly after Plaintiff had engaged in protected EEO activity, this put the Plaintiff on notice. ) "context matters" See: ( Plaintiff Exhibit 26, Mollet Thanking Bighorese for covering the front desk the flowing Day).

**174.** Plaintiff further alleges that the practical message communicated by this conduct was that management was watching her, that other employees could be used to report on her movements, and that her conduct could be investigated indirectly through subordinate personnel. In the context of the continuing retaliation alleged herein, such conduct contributed to the hostile and intimidating work environment and reasonably increased the pressure on Plaintiff.

**175.** The fact that Bighorse did not personally characterize the interaction as harassment does not eliminate the surrounding circumstances or the effect of management's conduct on Plaintiff. Bighorse was a subordinate employee, not an independent adjudicator of the dispute, and the relevant conduct was initiated by a management official concerning another employee who occupied a supervisory role. (ROI Bates Nos. 000163-000165, Ex. 10.)

**176.** The same pattern continued on April 18, 2025, when Mollet asked Caren Cassidy, another subordinate employee, whether Plaintiff was coming to work that day before Plaintiff's scheduled starting time. The Agency's own inquiry identifies April 18 as a separate incident and confirms that Cassidy was the employee contacted. (ROI Bates Nos. 000067 and 000167, Ex. 11; ROI Bates No. 000011, Ex. 8.)

**177.** The April 18 inquiry is particularly significant because Cassidy was herself a subordinate employee, Plaintiff was her direct Supervisor and the Agency's own witness affidavit identifies

Plaintiff as her supervisor. (ROI Bates Nos. 000007, 000167, Ex. 11.) Plaintiff alleges that Mollet could have contacted Plaintiff directly rather than obtaining information through a subordinate employee before Plaintiff's scheduled start time.

**178.** Mollet later stated that she contacted the front desk employee because she needed to connect with Plaintiff regarding a purchasing matter and because she and Plaintiff had been arriving early. Mollet also stated that she would not have asked other employees about their whereabouts in the same manner. (ROI Bates Nos. 000011-000012, Ex. 8.)

**179.** That explanation is materially weakened by the undisputed documentary evidence that Plaintiff's procurement responsibilities had been substantially restricted by management before the April 18 inquiry. ( Purchasing Authority Removed *March 7, 2025,* US Bank government purchase card shows: "Credit Limit: $1.00" "Available Credit: $1.00" "Billing Cycle Close Date: 03/07/2025"), see: ( Plaintiff Exhibit Twenty One ). Plaintiff's position description identifies procurement, purchase requisitions, purchase card responsibilities, and micro purchases as functions of her position. (ROI Bates Nos. 000204-000205, Ex. 15.) Plaintiff's evidence concerning the removal or restriction of her purchasing authority further shows that these responsibilities had already been stripped by Mollet before Mollet invoked "purchasing" as the reason for locating Plaintiff. Plaintiff asserts that Mollets level of dishonesty demonstrates the adverse work environment.

**180.** Plaintiff therefore alleges that the stated "purchasing" explanation was pretextual or, at minimum, lacked the urgency suggested by Mollet's later characterization. The temporal proximity between the prior EEO activity, the escalating scrutiny, the removal of purchasing authority, and the decision to locate Plaintiff indirectly through a subordinate employee supports an inference of retaliatory motive and pretext.

**181.** The Agency's own evidence also establishes that Plaintiff routinely arrived at work at approximately 7:45 a.m., while her scheduled start time was 8:00 am. The April 2025 time and attendance record reflects the recurring 7:45 a.m. Arrival. (ROI Bates Nos. 000137-000138.)

**182.** Against that background, Mollet's April 18 inquiry occurred before Plaintiff's scheduled start time. Plaintiff alleges that the decision to ask a subordinate employee whether Plaintiff was coming to work, rather than simply contacting Plaintiff, was unnecessary and formed part of the broader pattern of heightened monitoring directed specifically toward Plaintiff. There was simply no way that the subordinate employee would no if Plaintiff was coming to work that day, (ROI Bates Nos. 000011-000012, Ex. 8; ROI Bates Nos. 000067 and 000167, Ex. 11.)

**183.** These incidents also must be considered together with the Agency's own acknowledgment that Plaintiff's EEO activity was known within management. Branton acknowledged awareness of Plaintiff's prior EEO activity and received notice of the current complaint in January 2025. Mollet likewise acknowledged awareness of Plaintiff's prior EEO activity. (ROI Bates Nos. 000007-000008, Exs. 8-9.)

**184.** The timing is also significant. The challenged conduct occurred in March and April 2025, after Plaintiff's prior EEO activity and during active EEO proceedings, and the challenged events repeatedly concerned the very subjects through which an employee may be deterred from participating in an EEO process: time, attendance, leave, workplace presence, supervisory scrutiny, and interactions with management.

**185.** Plaintiff alleges that the individual incidents formed a connected course of conduct rather than unrelated workplace events: the March 13 leave notation; the April 14 office only directive concerning EEO work; the April 16 authorized luncheon; the April 17 inquiry through a subordinate employee; the April 18 inquiry through another subordinate employee before Plaintiff's scheduled start time; the April 21 time sheet rejection; and the April 28-29 dispute

concerning Plaintiff's EEO participation. The Agency's own EEO Counselor Report and ROI identify these events together as the claims presented in Plaintiff's 2025 EEO complaint. (ROI Bates Nos. 000020-000021, Ex. 2; ROI Bates Nos. 000396–000397, EEO Counselor Report.)

**186.** The cumulative effect was not limited to any single times sheet entry or lunch period. Plaintiff alleges that the conduct communicated that her attendance, whereabouts, use of leave, participation in EEO matters, and ordinary workplace activities were being subjected to a level of scrutiny and control that was not experienced by similarly situated employees, Plaintiff was and is a Supervisor, see: ( Plaintiff Exhibit 22, Job Appraisals for Supervisors 2023, 2024, 2025)

.

**187.** Plaintiff further alleges that the use of subordinate employees to obtain information about her whereabouts exacerbated the hostile environment because it altered the workplace relationships around her. It placed subordinate employees in the position of being approached by management concerning the movements of their supervisor and communicated to the work unit that Plaintiff was subject to unusual monitoring.

**188.** Taken together with the EEO related restrictions, the time sheet scrutiny, the April 16 authorization and subsequent investigation, the use of subordinate employees to monitor Plaintiff, and the Agency's dishonest reasons for there conduct, Plaintiff alleges that the record supports a strong inference that the stated reasons were not the sole reasons for management's actions and that retaliation for protected EEO activity was the motivating factor.

**189.** On or about March 13, 2025, in approving your medical leave request for Plaintiff on April 7, 2025, Ms. Mollet added a handwritten note that stated, "I am assuming that there is front desk coverage at both offices on this day?" This was and impossible situation for Plaintiff, there is no way to know if there will be converge almost a month after the medical Leave was requested.

**190.** The continuing retaliatory pattern did not end in 2025. On January 21, 2026, after the Agency's investigation had formally closed in September 2025, ( ROI 0004 ), and after Plaintiff requested a hearing on December 23, 2025, Agency attorney Viana engaged in an unauthorized and intimidating contact with a subordinate employee who worked directly under Plaintiff. This contact occurred outside Plaintiff's presence, without notice to Plaintiff, and without any legitimate investigative purpose, discovery had not been ordered by the Administrative Judge.

**191.** The subordinate employee, Karen Cassidy, reported to Plaintiff that the Agency attorney instructed her not to disclose the substance of their conversation and that she feared losing her job if she cooperated with Plaintiff's EEO case. This conversation was audio recorded by Plaintiffs representative Mark Davenport. Cassidy became visibly fearful, withdrawn, and hesitant to interact with Plaintiff following the attorney's contact. This conduct placed Plaintiff at odds with her own subordinate and created an atmosphere of intimidation, suspicion, and hostility within the work unit. (Plaintiff Exhibit 38, third page.)

**192.** Plaintiff alleges that the attorney's conduct was reasonably likely to deter Plaintiff and Chill others from engaging in protected EEO activity. The conduct subjected Plaintiff's subordinate to arbitrary investigative pressure and caused her to view Plaintiff as a source of potential trouble or scrutiny. This dynamic isolated Plaintiff, damaged her professional relationships, and contributed directly to the hostile work environment.

**193.** Following the attorney's contact, Cassidy expressed concern that she was now in trouble or under investigation because of Plaintiff's EEO activity. The attorney's conduct placed Plaintiff in direct conflict with her subordinate employee and materially altered the workplace dynamic by creating fear, distrust, and instability within the work group. The agency brought the case investigation into the work unit its self.

**194.** Plaintiff alleges that the January 21, 2026 incident was not an isolated act but part of the same continuing retaliatory course of conduct described throughout this Complaint. The conduct escalated the pattern of using subordinate employees to monitor, question, or report on Plaintiff, now carried out by Agency counsel after the close of the investigation. The timing, circumstances, and supervisory relationship make the conduct particularly severe. See *Burlington Northern and Santa Fe Railway Co. v. White,* 548 U.S. 53, 69 (2006) ("Context matters.").

**195.** Plaintiff asserts that the attorney's unauthorized contact materially contributed to the hostile work environment by undermining Plaintiff's authority as a supervisor, isolating her within her work unit, and creating fear among subordinate employees. The conduct was reasonably likely to intimidate, burden, and deter continued participation in the EEO process and constitutes unlawful interference with Plaintiff's protected rights. The January 21, 2026, allegation was timely raised as a new indecent, in front EEOC Administrative Judge Eric Yau. EEOC Case; 833-2026-00328X, Date: 2/25/2026. See; ( Plaintiffs Exhibit Ten, Motion to Amend. EEOC 2No. 833-2026-00328X ), page 8-9, ¶¶ 1.2 And complaints written objection, see; ( Plaintiffs Exhibit Ten C ). This indecent was raised in front of the Administrative Judge within 45 days.

**196.** On February 10, 2026, Plaintiff's first line supervisor, Muise, issued a directive stating that Plaintiff's representative was no longer permitted to enter the building. This directive was issued at the same time that RMO Debra Mollet was attempting to impose that Plaintiff work on her EEOC case only at her desk, within Mollet's sight. The directive was based on an alleged anonymous complaint claiming that Plaintiff's representative had been aggressive toward the subordinate witness who had been contacted by the Agency attorney on January 21, 2026. The Only persons present were Plaintiff, her representative Mark Davenport and Karin Cassidy Plaintiff subordinate. The accusation was false, unsupported by any evidence, and inconsistent

with the witness's own statements. The conversation between the witness and Plaintiff's representative was recorded. (Plaintiff Exhibit 39.)

**197.** The directive was issued without reference to any Agency policy, without any investigation, and without providing Plaintiff or her representative an opportunity to respond. Plaintiff alleges that the directive was arbitrary, retaliatory, and designed to isolate Plaintiff from her representative during active EEO proceedings. The Agency's investigation had already closed in 2025, and the hearing request had been submitted on December 23, 2025, eliminating any legitimate investigative purpose for restricting representative access.

**198.** The directive had the effect of barring Plaintiff's representative from the workplace, interfering with Plaintiff's ability to communicate with her representative, and isolating Plaintiff from support. Under 29 C.F.R. 1614.605(a), a complainant has the right to be accompanied, represented, and advised by a representative of their choice. The Commission has held that restricting access to a complainant's representative, criticizing an employee for engaging in the EEO process, or threatening disciplinary action based on EEO activity constitutes a per se violation. *See Mindy O. v. Department of Homeland Security, EEOC No. 0720150010 (2016) (statements discouraging EEO activity constitute per se reprisal).* Plaintiff asserts that this is a prime example of the Agency's hostility toward EEOC protected activity. Plaintiff's representative, Mark Davenport, was also her husband and had been inside the same building frequently while visiting his wife. However, when he acted as Plaintiff's EEOC representative, the Agency suddenly deemed him a threat and barred him from the same building, this said building was open to the public but no longer to Mark Davenport. Agency believed he was such a threat that they did not report it to the police. The February 10, 2026 was raised as a new indecent in front of Judge Eric Yau. EEOC Case; 833-2026-00328X, Date: 2/25/2026. See; ( Plaintiffs Exhibit Ten, Motion to Amend. EEOC 2No. 833-2026-00328X ), page 9, ¶ 3 And in

complaints written objection, to preserve the issue; ( Plaintiffs Exhibit Ten C ). This incident was raised in front of the Administrative Judge within 45 days.

**199.** Plaintiff alleges that the February 10 directive materially contributed to the hostile work environment by isolating her from her representative, undermining her ability to participate in the EEO process, and reinforcing the pattern of retaliatory interference. The directive communicated to Plaintiff and her subordinate employees that Plaintiff's protected activity was disfavored and that management would respond with escalating restrictions and intimidation. See Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 69 (2006) ("Context matters."). These events therefore constitute part of the continuing retaliatory hostile work environment alleged throughout this Complaint. Plaintiff alleges that the March and April 2025 conduct was reasonably likely, in its cumulative context, to intimidate, burden, and deter continued participation in the EEO process, and that it materially altered the conditions of Plaintiff's employment by subjecting her to continuing scrutiny, interference, intimidation, and retaliatory treatment after management had knowledge of her protected EEO activity.

Plaintiff Shelly George *Shelly George* __________

Date *9-10-2026*

Contact Phone; 480-749-0575

Contact Email; shelgeorge@aol.com

Mailing Address; 7149 E. Jolly Rouge Lane, Williams AZ 86046

USDA

**United States Department of Agriculture**

Office of the Assistant Secretary for Civil Rights

Center for Civil Rights Enforcement

1400 Independence Avenue SW

Washington, DC 20250

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**Center for Civil Rights Enforcement**

| | |
|---|---|
| Shelly George<br>Complainant | ) |
| v. | ) USDA Complaint No.: FS-2025-00372 |
| Brooke L. Rollins<br>Secretary<br>Department of Agriculture<br>Agency | ) |

## Final Agency Decision

## Introduction

In accordance with the Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110(b), this is the final decision of the United States Department of Agriculture (USDA) on this complaint.

## Issues Presented

Whether Complainant was subjected to discrimination and harassment (nonsexual) based on age (YOB: 1959) and reprisal (prior EEO activity)[1] when:

1. On April 29, 2025, management denied her request to telework to tend to her EEO complaint;

2. On or about April 21, 2025, management rejected and denied her timesheet and asserted she inaccurately reported her time and attendance;

[1] The record reflects the Complainant participated in prior EEO Complaint numbers: FS-2024-00693 and FS-2026-00121.

3. On or about April 14, 2025, management denied her leave request and told her she must work on her EEO complaint from the office;[2] and

4. On several dates, he was subjected to various incidents of harassment, including, but not limited to:

   a. On or about March 13, 2025, management sent her a note that stated "I am assuming that there is front desk coverage at both offices on this day" following management's approval of her request for medical leave;

   b. On or about April 17, 2025, management questioned the front desk clerk about the time Complainant returned from lunch and did not inquire about other employees; and

   c. On or about April 18, 2025, management asked a coworker if Complainant was coming to work that day before her scheduled time but did not inquire about other employees

## Procedural History

Complainant contacted the EEO Counselor to initiate this complaint on April 8, 2025. Complainant had a final interview with the EEO Counselor and was issued a Notice of Right to File a Formal Complaint on June 16, 2025. Complainant filed this formal complaint on June 18, 2025. The Agency acknowledged the complaint on June 20, 2025. The Agency accepted the claims in the formal complaint on July 11, 2025.[3] The Agency conducted an investigation between July 31, 2025, and December 17, 2025. Following the investigation, Complainant was notified of the right to have an EEOC hearing regarding the claims in the complaint or, alternatively, a final agency decision (FAD) by the Agency. Complainant initially requested an EEOC hearing, but the hearing request was dismissed on April 17, 2026. This FAD is issued in accordance with 29 C.F.R. § 1614.110(b).

## Factual Background

Complainant was employed as a GS-7 Administrative Support Assistant Employee Relations Lead for USDA Forest Service (FS), Kaibab National Forest, in Williams, Arizona, at the time relevant to this complaint. Complainant's supervisor relevant to this complaint was the District Ranger (Responsible Management Official 1 (RMO1)) (YOB:

---

[2] Although accepted as a leave-denial claim, the record reflects Complainant's principal contention was that management improperly restricted where should could engage in EEO-related activities and denied her request for compensable time associated with review of EEO materials.

[3] The Agency properly dismissed three claims Complainant presented as amendments to her complaint under 29 C.F.R. §1614.107(a)(1) because the Complainant raised the claims in previous EEO complaints. (Report of Investigation (ROI), Exhibit (Ex.) 5-1, p. 121)

1972). Complainant alleges management discriminated against and harassed her based on age and reprisal as outlined in the accepted issues and detailed below. (ROI, Ex. 7, p. 130)

**Statement of Facts**

1. **On April 29, 2025, management denied her request to telework to tend to her EEO complaint.**

*Complainant's Allegations*

Complainant testifies she did not request telework as asserted in the accepted claim. Complainant states she requested 2.5 hours to participate in EEO complaint activities and RMO1 denied her request, stating, "no guidance for EEO activities being exempt from the new telework policy." Complainant contends she believes her age was a factor because she is the oldest female in the office and believes management is bullying her because she has blown the whistle on RMO1, exposed RMO1, and reported RMO1's misconduct. Complainant states she also believes her EEO activity was a factor for the same reasons. (ROI, Ex. 7, pp. 131-132)

*Agency's Responses*

RMO1 testifies she received a request from Complainant on April 28, 2025, to be absent from the office for EEO activities. RMO1 contends it was unclear from the request whether Complainant was requesting leave, telework, or another option. RMO1 testifies she did not have the authority to grant telework if that was what Complainant was requesting. RMO1 asserts she did not deny Complainant's request and, rather, she only advised Complainant she did not have authority to grant Complainant telework to work on her EEO activity at home. RMO1 states she did not discriminate or retaliate against Complainant as claimed. (ROI, Ex. 8, pp. 146-148)

2. **On or about April 21, 2025, management rejected and denied her timesheet and asserted she inaccurately reported her time and attendance.**

*Complainant's Allegations*

Complainant testifies RMO1 rejected her timesheet and asserted Complainant had inaccurately reported her time. Specifically, Complainant contends RMO1 advised Complainant could not use her two 15-minute breaks on April 17, 2025, in conjunction with her 30-minute lunch period to attend a going-away luncheon for departing employees, even though Complainant did not take the two 15-minute breaks that day. Complainant asserts RMO1 cited a 30-year-old policy restricting the use of the 15-minute breaks. Complainant states she believes this issue was due to age discrimination and reprisal for prior EEO activity for the same reasons she previously presented. Complainant contends she is the oldest female in the office and believes management

bullied her because she has blown the whistle on RMO1, exposed RMO1, and reported RMO1's misconduct. (ROI, Ex. 7, pp. 132-134)

*Agency's Responses*

RMO1 testifies she rejected Complainant's timesheet on April 21, 2025, because of inaccuracies in the reporting of time. RMO1 states on Complainant's timesheet, it was stated Complainant went to lunch from 12:00 p.m. to 12:30 p.m., but she was aware Complainant did not return from lunch until 1:20 p.m. RMO1 asserts, as Complainant's supervisor, she rejected the timesheet and instructed Complainant to correct the timesheet. RMO1 attests the exact same issue occurred with Complainant's direct report employee, who attended the same lunch as Complainant. RMO1 testifies she returned both employees' time sheets for the same reason. RMO1 contends Complainant stated she was using her two 15-minute breaks to extend her lunch if that was permissible. RMO1 asserts she responded it was not permissible. RMO1 states this issue was unrelated to Complainant's age and prior EEO activity. (ROI, Ex. 8, pp. 148-150)

3. **On or about April 14, 2025, management denied her leave request and told her she must work on her EEO complaint from the office.**

*Complainant's Allegations*

Complainant testifies she did not request leave and was not denied leave as asserted in the accepted claim. Instead, Complainant contends she requested five hours of compensatory time for the time she spent working on her EEO complaint over a weekend. Complainant testifies RMO1 denied her request for compensatory time. Complainant states she believes this issue was due to age discrimination and reprisal for prior EEO activity for the same reasons she previously presented. (ROI, Ex. 7, pp. 134-136)

*Agency's Responses*

RMO1 testifies Complainant requested on April 14, 2025, to take off for a period of time on April 15, 2025, to work on EEO legal matters. RMO1 states she asked for clarification on whether Complainant was requesting leave or using credit hours. RMO1 asserts Complainant indicated she wanted to use credit hours and she approved Complainant's request. RMO1 states she did not deny Complainant's request. (ROI, Ex. 8, pp. 150-151)

4. **On several dates, he was subjected to various incidents of harassment, including, but not limited to:**

    a. **On or about March 13, 2025, management sent her a note that stated "I am assuming that there is front desk coverage at both offices on this day" following management's approval of her request for medical leave.**

*Complainant's Allegations*

Complainant testifies on March 13, 2025, she requested personal leave to attend a medical appointment, and RMO1 approved her request. Complainant states, upon approving her request, RMO1 sent her a note stating, "I am assuming that there is front desk coverage at both offices on this day?" Complainant asserts if there had been no coverage, she would not have been able to attend her medical appointment. Complainant states the note was totally unnecessary and RMO1 wrote the note only to harass, annoy, bully, and intimidate her. Complainant contends she believes this issue was due to age discrimination and reprisal for prior EEO activity for the same reasons she previously presented. (ROI, Ex. 7, pp. 136-138)

*Agency's Responses*

RMO1 testifies she instructs all her employees to accompany their leave requests with information about who will be the point of contact for their critical work items during their absence. RMO1 contends Complainant did not include the information in her leave request, so she followed up by asking Complainant whether she had arranged coverage. RMO1 states Complainant's age and prior EEO activity were not factors. (ROI, Ex. 8, pp. 152-154)

**b. On or about April 17, 2025, management questioned the front desk clerk about the time Complainant returned from lunch and did not inquire about other employees.**

*Complainant's Allegations*

Complainant testifies on April 17, 2025, RMO1 asked the front desk clerk what time Complainant returned from lunch but did not inquire about other employees. Complainant states she believes this issue was due to age discrimination and reprisal for prior EEO activity for the same reasons she previously presented. (ROI, Ex. 7, pp. 138-139)

*Agency's Responses*

RMO1 testifies she asked the front desk clerk on April 17, 2025, whether Complainant had returned to work from lunch because she needed to discuss a purchase order with Complainant and could not locate Complainant. RMO1 states she asked the front desk clerk because the front desk clerk would have seen Complainant come in from lunch. RMO1 further states she would not have asked the front desk clerk about the whereabouts of other employees because the front desk clerk was stationed at the front desk and would generally only know the whereabouts of employees working in that area. RMO1 states the inquiry was a routine supervisory question related to a time-sensitive work matter and contends Complainant's age and prior EEO activity were not factors. (ROI, Ex. 8, pp. 154-156).

The front desk clerk states she was covering the front desk during Complainant's lunch period, which was scheduled for thirty minutes but lasted approximately one hour. The front desk clerk states management asked where Complainant was, and she responded Complainant had not yet returned from lunch. The front desk clerk further states she did not view the inquiry as harassment, describing it as normal questioning given the expected lunch period, and she does not believe age or prior EEO activity were factors in the inquiry. (ROI, Ex. 10, pp. 164-165).

c. **On or about April 18, 2025, management asked a coworker if Complainant was coming to work that day before her scheduled time but did not inquire about other employees.**

*Complainant's Allegations*

Complainant testifies on April 18, 2025, RMO1 asked her coworker if she was coming into work that day before she was scheduled to start and did not inquire about other employees. Complainant states she believes this issue was due to age discrimination and reprisal for prior EEO activity for the same reasons she previously presented. (ROI, Ex. 7, pp. 139-140)

*Agency's Responses*

RMO1 testifies she asked the "front-liner" whether Complainant would be in that day because Complainant and the front-liner usually arrived to work at the same time, and RMO1 had not seen Complainant. RMO1 states she wanted to connect with Complainant to ask a purchasing question and thought the front-liner might know whether Complainant would be in. RMO1 further states she was concerned about Complainant's welfare given recent sick leave for family and medical reasons. RMO1 contends Complainant's age and prior EEO activity were not factors. (ROI, Ex. 8, pp. 156-159).

The coworker recalls RMO1 asking, in general terms, who would be covering the front desk that day. The coworker states the inquiry did not appear directed at Complainant specifically and did not seem derogatory or accusatory. The coworker further states she did not consider the inquiry to be harassing and does not believe Complainant's age or prior EEO activity were factors. (ROI, Ex. 11, pp. 168-169).

*Complainant's Rebuttal*

Complainant provided a rebuttal statement in which she states RMO1's testimony "contains inconsistencies, intentional omissions, admissions against interest, fabrications, and acts of lack of candor." Complainant, however, did not present any new evidence in her rebuttal to support her claims regarding RMO1's alleged discriminatory and retaliatory motives based on her age and prior EEO activity. (ROI, Ex. 12, pp. 244-258)

## Applicable Law

This complaint arises under the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 633a. The ADEA prohibits discrimination against individuals who are at least 40 years of age with respect to compensation, terms, conditions, or privileges of employment. The ADEA also prohibits reprisal against an individual because the individual opposed unlawful discrimination or participated in the EEO complaint process.

A complainant may establish discrimination through either direct or circumstantial evidence. In the absence of direct evidence, claims of disparate treatment are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, a complainant must initially establish a prima facie case of discrimination by presenting facts which, if unexplained, reasonably give rise to an inference of unlawful discrimination.

Once a prima facie case is established, the burden shifts to the Agency to articulate a legitimate, nondiscriminatory reason for the challenged action. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). If the Agency meets this burden, the complainant must prove, by a preponderance of the evidence, the Agency's articulated reason is a pretext for unlawful discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

### Age Discrimination

The ADEA prohibits discrimination against individuals who are at least 40 years of age. To establish a prima facie case of age discrimination, a complainant generally must show: (1) membership in the protected age group; (2) an adverse employment action; and (3) circumstances supporting an inference age was a factor in the challenged action. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996).

Once the Agency articulates a legitimate, nondiscriminatory reason for its actions, the complainant bears the ultimate burden of proving, by a preponderance of the evidence, the articulated reason is a pretext for age discrimination. Reeves, 530 U.S. at 143. Subjective belief, speculation, and unsupported assertions are insufficient to establish discriminatory motive or pretext. See Elvis G. v. United States Postal Service, EEOC Appeal No. 0120170677 (September 5, 2018).

### Reprisal

Reprisal claims are distinct from disparate treatment and harassment claims and require a slightly different analytical framework. A complainant can establish a prima facie case of reprisal discrimination by showing: (1) she/he engaged in protected EEO activity; (2) the alleged discriminating officials were aware of the protected activity; (3) she/he was disadvantaged by an Agency action contemporaneous with or subsequent to the protected activity; and (4) a nexus exists between the protected activity and the challenged action.

The causal connection may be shown by evidence the adverse action followed the protected activity within such a period of time and in such a manner a reprisal motive may reasonably be inferred. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976); Simens v. Department of Justice, EEOC Request No. 05950113 (March 28, 1996).

The EEOC's policy is to view reprisal claims with a broad view of coverage. Carroll v. Department of the Army, EEOC Request No. 05970939 (April 3, 2000); EEOC Compliance Manual, EEOC Order No. 915.003, Retaliation (May 20, 1998). The Commission has held that retaliatory actions are not limited to those affecting a term or condition of employment. Therefore, a complainant is protected from actions reasonably likely to deter protected EEO activity. Id.

To establish a causal connection, a complainant must show, by a preponderance of the evidence, the responsible management officials had knowledge of the prior EEO activity at the time the challenged conduct occurred. See Mason v. Tennessee Valley Authority, EEOC Appeal No. 01840126 (December 31, 1984). A complainant cannot prevail simply by showing someone within the Agency had knowledge of the protected activity. Odom v. U.S. Postal Service, EEOC Appeal No. 01842223 (June 2, 1986). Additionally, where a complainant relies on temporal proximity to establish causation, the proximity must be very close. Clark County School District v. Breeden, 532 U.S. 268 (2001).

If the Agency articulates a legitimate, non-retaliatory reason for its actions, the complainant bears the ultimate burden of proving, by a preponderance of the evidence, the articulated reason is a pretext for reprisal. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). Mere disagreement with management's actions, subjective belief, speculation, and unsupported assertions are insufficient to establish retaliatory motive or pretext.

**Harassment**

Harassment based on age or prior protected EEO activity is actionable when the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an objectively hostile, intimidating, or abusive work environment. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993); Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986); Roberts v. Department of Transportation, EEOC Appeal No. 01970729 (September 15, 2000).

To establish a claim of harassment, a complainant must show: (1) membership in a protected class or engagement in protected EEO activity; (2) unwelcome verbal or physical conduct; (3) the conduct was based on the protected class or protected activity; (4) the conduct had the purpose or effect of unreasonably interfering with work performance or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the Agency. McCleod v. Social Security Administration, EEOC Appeal No. 01963810 (August 5, 1999).

The conduct must be evaluated from the perspective of a reasonable person in the complainant's position and in light of the totality of the circumstances, including the nature, frequency, and severity of the alleged conduct. Harris, 510 U.S. at 23.

The anti-discrimination statutes are not a general civility code. Routine workplace disputes, supervisory inquiries, workplace monitoring, personality conflicts, and ordinary workplace interactions do not constitute actionable harassment absent evidence linking the conduct to a protected basis. See DiFruscio v. Social Security Administration, EEOC Appeal No. 01982006 (September 13, 2000); Wolf v. United States Postal Service, EEOC Appeal No. 01961559 (July 23, 1998).

Further, a finding of discriminatory or retaliatory harassment is precluded where the evidence does not establish the challenged conduct was motivated by discriminatory or retaliatory animus. See Aron J. v. Department of the Army, EEOC Appeal No. 0120182395 (September 20, 2019).

## Analysis and Finding

**CLAIM 1: On April 29, 2025, management denied her request to telework to tend to her EEO complaint.**

*Disparate Treatment Based on Age*

Complainant belongs to a protected class under the ADEA because she is over the age of 40. Complainant alleges she suffered an adverse action when, on April 29, 2025, management denied her leave request to telework to tend to her EEO complaint. Specifically, Complainant states she requested 2.5 hours to participate in EEO activities and her request was denied. Complainant contends age was a factor in the challenged action and asserts similarly situated younger employees were treated more favorably. Although the record contains little evidence supporting an inference of age discrimination, for purposes of analysis the Agency assumes, without deciding, Complainant established a prima facie case of age discrimination and proceeds to the remaining steps of the McDonnell Douglas framework.

The burden of production now moves to the Agency to articulate legitimate, nondiscriminatory reasons for its actions. Burdine, 450 U.S. at 248-56. RMO1 states Complainant's request for time off to work on her EEO activities was unclear. RMO1 states she responded by indicating she lacked authority to grant telework under the applicable policy. The record supports RMO1 did not deny Complainant's ability to engage in EEO activity, but rather clarified limitations regarding telework approval. Here, the Agency has articulated a legitimate, nondiscriminatory reason for the action Complainant claims to have been discriminatory.

Next, the burden shifts back to Complainant to demonstrate the Agency's legitimate nondiscriminatory reasons are pretext, masking illegal discrimination. Complainant

testifies management's testimony contains inconsistencies and omissions. Based on a thorough review of the record, Complainant has not provided evidence to establish management's actions were discriminatory based on her age. Notably, Complainant herself testified she did not request telework to work on her EEO activities. Moreover, the record contains no evidence younger similarly situated employees were treated more favorably under comparable circumstances. Nor does the record contain age-related remarks, comments, or conduct from management would support an inference of age-based animus.

Additionally, Complainant's assertion that she is the oldest female in the office and her belief management was "bullying" her, without more, is insufficient to establish age was a motivating factor in the Agency's actions. The record contains no evidence connecting RMO1's response to Complainant's age. The record contains no evidence Complainant was denied the opportunity to engage in protected EEO activity or otherwise treated differently because of her age. Complainant presented only her subjective belief management was motivated by age-based animus. However, subjective belief, speculation, and unsupported assertions are insufficient to establish the Agency's articulated reason was pretext for discrimination. See Elvis G. v. United States Postal Service, EEOC Appeal No. 0120170677 (September 5, 2018).

Accordingly, Complainant failed to establish management's articulated reason was a pretext for age discrimination. Therefore, the Agency finds no discrimination based on age.

*Disparate Treatment Based on Reprisal*

Complainant engaged in protected EEO activity when she filed two previous EEO complaints, FS-2024-00693 (resolved in April 2026), FS-2026-00121 (resolved in April 2026), and when she initiated the instant complaint on April 8, 2025. Complainant testifies she requested 2.5 hours to participate in EEO-related activity and her request was denied. Because the responsible management officials were aware of Complainant's prior EEO activity and the challenged action occurred after that activity, the Agency assumes, without deciding, Complainant established a prima facie case of reprisal and proceeds to the remaining steps of the burden-shifting analysis.

The burden of production now moves to the Agency to articulate legitimate, nondiscriminatory reasons for its actions. Burdine, 450 U.S. at 248-56. The Agency's articulated reasons for subjecting Complainant to the actions referenced in the claim are hereby incorporated into this section by reference to the Agency's burden of production for these actions noted above in the analysis of Complainant's disparate treatment claim based on age. Based on this explanation, and the record, the Agency has articulated legitimate, nondiscriminatory reasons for its actions. Specifically, the record reflects management believed Complainant's request implicated telework restrictions associated with the Return-to-Office directive and responded based upon its understanding of those requirements. The record further reflects management did not prohibit Complainant from engaging in EEO activity and did not deny her participation in the EEO process. Even

assuming Complainant disagreed with management's interpretation, the evidence does not establish Complainant was denied a reasonable opportunity to participate in the EEO process or management's actions were motivated by retaliatory animus.

Next, the burden shifts back to Complainant to demonstrate the Agency's legitimate nondiscriminatory reasons are pretext, masking illegal discrimination. Complainant testifies management's testimony contains inconsistencies and omissions. Based on a thorough review of the record, Complainant has not provided evidence to establish management's actions were discriminatory based on reprisal for her prior EEO activity. Notably, Complainant herself testified she did not request telework to work on her EEO activities. Accordingly, any alleged denial of a telework request by management is unsupported by the record.

The record contains no evidence Complainant was denied the opportunity to engage in protected EEO activity or otherwise subjected to materially adverse treatment because of her prior EEO activity. While Complainant disagrees with management's interpretation of applicable policies, disagreement with a management decision is insufficient, standing alone, to establish retaliatory motive. Further, Complainant has not established management's articulated explanation was false or retaliation for prior EEO activity was the real reason for the challenged action. Other than her own belief management acted with retaliatory intent, Complainant has produced no evidence connecting the challenged action to her prior EEO activity. Unsupported belief and speculation are insufficient to establish pretext. See Elvis G., EEOC Appeal No. 0120170677.

Accordingly, Complainant failed to establish the challenged action was motivated by reprisal for prior EEO activity. Therefore, the Agency finds no reprisal discrimination.

**CLAIM 2: On or about April 21, 2025, management rejected and denied her timesheet and asserted she inaccurately reported her time and attendance.**

*Disparate Treatment Based on Age*

Complainant belongs to a protected class under the ADEA because she is over the age of 40. Complainant alleges she was subjected to an adverse action when, on or about April 21, 2025, management rejected her timesheet and asserted she inaccurately reported her time. Complainant contends age was a factor in the challenged action and asserts similarly situated younger employees were treated more favorably. Although the record contains little evidence supporting an inference of age discrimination, for purposes of analysis the Agency assumes, without deciding, Complainant established a prima facie case of age discrimination and proceeds to the remaining steps of the McDonnell Douglas framework.

The burden of production now moves to the Agency to articulate legitimate, nondiscriminatory reasons for its actions. Burdine, 450 U.S. at 248-56. RMO1 testifies she rejected Complainant's timesheet on April 21, 2025, based on discrepancies in

reported time and instructed Complainant to correct the entry. RMO1 testifies Complainant recorded a lunch period from 12:00 p.m. to 12:30 p.m. but did not return until approximately 1:20 p.m. RMO1 further testifies when Complainant asserted she used her two 15-minute breaks to extend her lunch, RMO1 advised such use was not permissible under the applicable policy. The Agency notes correction of a timesheet entry, without evidence of a tangible employment consequence, is generally not the type of action that, standing alone, gives rise to an inference of discrimination. Based on this explanation, and the record, the Agency has articulated legitimate, nondiscriminatory reasons for its actions.

The record further reflects management applied the same timekeeping standards to another employee who attended the same luncheon and whose timesheet was similarly returned for correction. This evidence supports management's explanation the action was based on perceived timekeeping inaccuracies rather than discriminatory considerations.

Next, the burden shifts back to Complainant to demonstrate the Agency's legitimate nondiscriminatory reasons are pretext, masking illegal discrimination. Complainant argues management's testimony contains inconsistencies and omissions. However, disagreement with management's interpretation of policy or assessment of timekeeping records does not establish discrimination. Even assuming, arguendo, the rejection of the timesheet constitutes an adverse action, the Agency has articulated a legitimate, nondiscriminatory reason for its actions, namely correction of inaccurate time reporting and enforcement of established timekeeping requirements. Significantly, the evidence establishes another employee who attended the same luncheon had his or her timesheet similarly returned for correction based on the same issue. This substantially undermines an inference Complainant was singled out because of age.

Further, the record contains no evidence of age-related remarks, comments, or conduct by management. Nor does the record contain evidence younger similarly situated employees engaged in comparable conduct but were treated more favorably. Complainant's assertion that she is the oldest female in the office and her belief management was "bullying" her, without evidence connecting the challenged action to her age, is insufficient to establish discriminatory animus. Subjective belief and speculation alone are insufficient to establish pretext. See Elvis G. v. United States Postal Service, EEOC Appeal No. 0120170677.

Accordingly, Complainant failed to establish management's articulated reason was a pretext for age discrimination. Therefore, the Agency finds no discrimination based on age.

*Disparate Treatment Based on Reprisal*

Complainant engaged in protected EEO activity when she filed two previous EEO complaints, FS-2024-00693 (resolved in April 2026), FS-2026-00121 (resolved in April 2026), and when she initiated the instant complaint on April 8, 2025. Because management was aware of Complainant's prior EEO activity and the challenged action

occurred after that activity, the Agency assumes, without deciding, Complainant established a prima facie case of reprisal and proceeds to the remaining steps of the burden-shifting analysis.

The burden of production now moves to the Agency to articulate legitimate, nondiscriminatory reasons for its actions. Burdine, 450 U.S. at 248-56. The Agency's articulated reasons for subjecting Complainant to the actions referenced in the claim are hereby incorporated into this section by reference to the Agency's burden of production for those actions noted above in the analysis of Complainant's age discrimination claim. The Agency notes correction of a timesheet entry, without evidence of a tangible employment consequence, is generally not the type of action that, standing alone, gives rise to an inference of discrimination. Based on this explanation, and the record, the Agency has articulated legitimate, nondiscriminatory reasons for its actions.

Specifically, the record reflects management believed Complainant inaccurately reported her time and returned the timesheet for correction consistent with established timekeeping requirements. The record further reflects another employee who attended the same luncheon was subjected to the same review and correction process.

Next, the burden shifts back to Complainant to demonstrate the Agency's legitimate nondiscriminatory reasons are pretext, masking illegal discrimination. Complainant testifies management's testimony contains inconsistencies and omissions. Based on a thorough review of the record, Complainant has not established management's articulated explanation was pretext for retaliation. The evidence demonstrates management believed Complainant inaccurately reported her time and required correction of the entry. Importantly, another employee who attended the same luncheon was subjected to the same review and correction process. This evidence undermines any inference Complainant was singled out because of her prior EEO activity.

Although Complainant disagrees with management's actions and believes management was motivated by retaliatory animus, subjective belief alone is insufficient to establish pretext. The record contains no persuasive evidence management's explanation was false or retaliation for prior EEO activity was the real reason for the challenged action. Absent credible, persuasive, or reliable evidence of retaliatory intent, the Commission will not second-guess routine management decisions. See Chara v. Department of Veterans Affairs, EEOC Appeal No. 2022003889 (January 21, 2025).

Accordingly, Complainant failed to establish the challenged action was motivated by reprisal for prior EEO activity. Therefore, the Agency finds no reprisal discrimination.

**CLAIM 3: On or about April 14, 2025, management denied her leave request and told her she must work on her EEO complaint from the office.**[4]

[4] Although the accepted claim is framed as a denial of leave, the evidence developed during the investigation reflects Complainant disputes she requested leave and instead contends management improperly denied compensatory time and restricted where EEO-related activities could be performed. Management, in turn, maintains Complainant requested and was approved to use credit hours. Accordingly,

*Disparate Treatment Based on Age*

Complainant belongs to a protected class under the ADEA because she is over the age of 40. Complainant alleges she suffered an adverse action when, on or about April 14, 2025, management denied her leave request and told her she must work on her EEO complaint from the office. Complainant contends age was a factor in the challenged action and asserts similarly situated younger employees were treated more favorably. Specifically, Complainant states she requested five hours of compensatory time for time she spent working on her EEO complaint over a weekend and RMO1 denied her request. Although the record contains little evidence supporting an inference of age discrimination, for purposes of analysis the Agency assumes, without deciding, Complainant established a prima facie case of age discrimination and proceeds to the remaining steps of the McDonnell Douglas framework.

The burden of production now moves to the Agency to articulate legitimate, nondiscriminatory reasons for its actions. Burdine, 450 U.S. at 248-56. RMO1 testifies Complainant requested time off on April 15, 2025, to work on EEO-related matters and, after clarification, Complainant indicated she wished to use credit hours. RMO1 states she approved Complainant's request to use credit hours. Here, the Agency has articulated a legitimate, nondiscriminatory reason for the action Complainant claims to have been discriminatory. The record further reflects management approved Complainant's request to use credit hours after clarification of the request. Thus, the evidence does not support Complainant's assertion management denied her request to engage in EEO-related activities.

Next, the burden shifts back to Complainant to demonstrate the Agency's legitimate nondiscriminatory reasons are pretext, masking illegal discrimination. Complainant argues management's testimony contains inconsistencies and omissions. However, disagreement with management's interpretation of events does not establish discrimination. The evidence establishes management approved Complainant's request after Complainant clarified she wished to use credit hours. Thus, the record does not support the accepted claim management denied Complainant's request. Further, to the extent Complainant contends management improperly denied compensatory time or required EEO-related activities to be performed from the office, the record contains no evidence younger similarly situated employees were treated more favorably under comparable circumstances. Nor does the record contain age-related remarks, comments, or conduct by management.

Complainant's assertion that she is the oldest female in the office and her belief management was "bullying" her are insufficient, without more, to establish discriminatory animus. Subjective belief and speculation alone do not establish management's articulated reason was a pretext for age discrimination. See Elvis G., EEOC Appeal No. 0120170677 (September 5, 2018). The record instead demonstrates

---

the Agency analyzes the claim consistent with the accepted issue and the substance of the evidence developed during the investigation.

management sought clarification of Complainant's request and approved use of credit hours.

Accordingly, Complainant failed to establish management's articulated reason was a pretext for age discrimination. Therefore, the Agency finds no discrimination based on age.

*Disparate Treatment Based on Reprisal*

Complainant engaged in protected EEO activity when she filed two previous EEO complaints, FS-2024-00693 (resolved in April 2026), FS-2026-00121 (resolved in April 2026), and when she initiated the instant complaint on April 8, 2025. Because management was aware of Complainant's prior EEO activity and the challenged action occurred after that activity, the Agency assumes, without deciding, Complainant established a prima facie case of reprisal and proceeds to the remaining steps of the burden-shifting analysis.

The burden of production now moves to the Agency to articulate legitimate, nondiscriminatory reasons for its actions. Burdine, 450 U.S. at 248-56. The Agency's articulated reasons for subjecting Complainant to the actions referenced in the claim are hereby incorporated into this section by reference to the Agency's burden of production for those actions noted above in the analysis of Complainant's age discrimination claim. Based on this explanation, and the record, the Agency has articulated legitimate, nondiscriminatory reasons for its actions.

Specifically, the record reflects management sought clarification regarding whether Complainant was requesting leave, compensatory time, or credit hours and subsequently approved Complainant's request to use credit hours. The record further reflects management did not prevent Complainant from engaging in EEO-related activity.

Next, the burden shifts back to Complainant to demonstrate the Agency's legitimate nondiscriminatory reasons are pretext, masking illegal discrimination. Complainant testifies management's testimony contains inconsistencies and omissions. Based on a thorough review of the record, Complainant has not established management's articulated explanation was pretext for retaliation. The evidence reflects management sought clarification concerning Complainant's request and approved the use of credit hours once clarification was provided. The record does not establish management denied Complainant's participation in the EEO process or prevented her from pursuing EEO-related activities.

Further, although Complainant believes management's actions were retaliatory, the record contains no persuasive evidence management's explanation was false or reprisal for prior EEO activity was the real reason for the challenged action. Other than Complainant's subjective belief, there is no evidence linking management's actions to retaliatory animus. Disagreement with management's interpretation of workplace policies

or dissatisfaction with management's response to a request does not establish reprisal. Unsupported belief or speculation are insufficient to establish pretext.

Accordingly, Complainant failed to establish the challenged action was motivated by reprisal for prior EEO activity. Therefore, the Agency finds no reprisal discrimination.

**Harassment/Hostile Work Environment (Claims 4a-4c)**

Complainant alleges harassment based on the protected bases of age and reprisal for prior protected EEO activity. Complainant alleges she was subjected to unwelcome conduct when: (a) on or about March 13, 2025, management sent her a note stating, "I am assuming that there is front desk coverage at both offices on this day" following management's approval of her request for medical leave; (b) on or about April 17, 2025, management questioned the front desk regarding the time Complainant returned from lunch and did not inquire about other employees; and (c) on or about April 18, 2025, management asked a coworker whether Complainant was coming to work that day before her scheduled start time but did not inquire about other employees.

For purposes of this analysis, the Agency assumes, without deciding, Complainant satisfied the first and second elements of a prima facie harassment claim by establishing membership in a protected age group, prior protected EEO activity, and alleging conduct she considered unwelcome. The dispositive issues are whether the challenged conduct occurred because of Complainant's age or prior EEO activity and whether the conduct was sufficiently severe or pervasive to create a hostile work environment.

With respect to allegation (a), the record reflects management approved Complainant's leave request and merely inquired whether front desk coverage had been arranged during her absence. Even assuming Complainant found the note unwelcome, a supervisory inquiry concerning staffing coverage is facially work-related and does not demonstrate age-based or retaliatory animus. The record contains no evidence the note referenced Complainant's age, prior EEO activity, or any other protected characteristic. Rather, the note concerned staffing coverage for front office operations, an issue directly related to Complainant's assigned duties and management's operational responsibilities.

With respect to allegation (b), the record reflects management was attempting to locate Complainant regarding a work-related purchasing matter. The front desk employee corroborated management asked about Complainant's whereabouts and did not perceive the inquiry as discriminatory, retaliatory, or harassing. The evidence reflects a routine workplace inquiry concerning an employee's availability and does not support an inference of discriminatory or retaliatory motive.

With respect to allegation (c), management explained it expected Complainant to be present and was attempting to address work-related matters and staffing needs. The coworker did not perceive the inquiry as discriminatory, retaliatory, or harassing and did not attribute the inquiry to Complainant's age or prior EEO activity. The record reflects a

routine inquiry concerning attendance and workplace coverage and does not establish the conduct was motivated by Complainant's age or prior EEO activity.

Even assuming all incidents occurred as alleged and constituted unwelcome conduct, the record does not establish the conduct occurred because of Complainant's age or prior EEO activity. Rather, the evidence reflects routine supervisory interactions concerning staffing coverage, attendance, workplace operations, and administrative matters. The record contains no age-related remarks, references to Complainant's prior EEO activity, or other evidence from which discriminatory or retaliatory animus may reasonably be inferred.

Complainant asserts she is the oldest female in the office and believes management "bullied" her because she reported alleged misconduct and engaged in protected EEO activity. While Complainant sincerely believes management's actions were motivated by age discrimination and reprisal, subjective belief alone is insufficient to establish discriminatory intent absent corroborating evidence. Here, the record contains no objective evidence linking the challenged conduct to Complainant's age or prior EEO activity. Although Complainant challenges management's credibility and contends management's testimony contains inconsistencies and omissions, disagreement with management's explanations does not establish unlawful motive.

Further, the evidence does not corroborate Complainant's allegations of harassment. Neither witness attributed management's conduct to Complainant's age or prior EEO activity, and neither perceived the conduct as discriminatory, retaliatory, or harassing. Even assuming all incidents occurred as alleged, the incidents consist of routine supervisory interactions, inquiries regarding attendance, staff coverage, and workplace administration. Such actions are not sufficiently severe or pervasive to alter the terms, conditions, or privileges of employment or to create an objectively hostile, intimidating, or abusive work environment. The Commission has consistently held ordinary workplace disputes, dissatisfaction with supervisory decisions, and routine workplace monitoring do not constitute actionable harassment absent evidence linking the conduct to a protected basis.

Moreover, a finding of discriminatory or retaliatory hostile work environment is precluded where a complainant fails to establish the challenged conduct was motivated by discriminatory or retaliatory animus. See Aron J. v. Department of the Army, EEOC Appeal No. 0120182395 (September 20, 2019). In this case, Complainant failed to present evidence establishing management's actions were motivated by her age or prior EEO activity.

Further, the record contains no evidence management subjected Complainant to age-related comments, references to prior EEO activity, personal slurs, ridicule, insults, threats, or other conduct typically associated with a hostile work environment. Even if all allegations are credited, the conduct complained of does not create a workplace "permeated with discriminatory intimidation, ridicule, or insult" that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

Accordingly, the Agency finds Complainant failed to establish the challenged conduct occurred because of her age or prior EEO activity or the conduct was sufficiently severe or pervasive to create a hostile work environment. Therefore, Complainant failed to establish discriminatory or retaliatory harassment as alleged.

## Conclusion

The Agency finds Complainant failed to establish by a preponderance of the evidence that the Agency subjected her to discrimination or harassment based on age or reprisal. Accordingly, no relief or corrective action is warranted or ordered in this matter.

## APPEAL RIGHTS

This is the final decision of the USDA on the cited complaint. The following are the only rights available to challenge this decision.

## APPEAL TO THE EEOC

A Notice of Appeal may be filed with the EEOC within thirty (30) calendar days after receipt of this final decision. EEOC Form 573 Notice of Appeal/Petition, should be used in filing the appeal, as well as what is being appealed should be indicated in the form. A copy of EEOC Form 573 is provided with this decision. Such notice should be addressed to:

Equal Employment Opportunity Commission
Office of Federal Operations
Post Office Box 77960
Washington, DC 20013

As an alternative to mailing, your appeal may be hand-delivered to:

Equal Employment Opportunity Commission
Office of Federal Operations
131 M Street, NE
Suite 5SRMO22G
Washington, DC 20507

As an alternative, you may also send your appeal by fax to the Office of Federal Operations at **(202) 663-7022.**

If you desire to submit your appeal electronically, send to the EEOC Public Portal:

https://publicportal.eeoc.gov/Portal/Login.aspx - (Public Portal)

If there is an attorney of record, the thirty (30) calendar daytime limit within which to appeal shall be calculated from the date of receipt of this decision by the attorney. In all other cases, the thirty (30) calendar daytime limit within which to appeal shall be calculated from the date of your receipt of this decision.

The appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the EEOC.

At the time information is provided to the EEOC (to include a copy of the Notice of Appeal and any submissions in support of the appeal), there **must** be a service certification that a copy of the submission **has been** submitted to the USDA/Employment Complaints Division and the date and method of service. A copy of the appeal and any submissions in support thereof shall be forwarded to the agency at the following address:

U.S. Department of Agriculture
Center for Civil Rights Enforcement
Employment Complaints Division
1400 Independence Avenue, S.W.
Washington, DC 20250-9440

Please note, if your appeal is not filed within the thirty (30) calendar daytime limit, the appeal may be dismissed by the EEOC. However, the EEOC may, at its discretion, extend the time limits and accept the appeal based upon a written statement there was no actual notification of the time limit, or that a timely Notice of Appeal could not be filed, due to extenuating circumstances.

Any statement or brief in support of your appeal must be submitted to the EEOC within thirty (30) calendar days of filing of the Notice of Appeal. The EEOC, Office of Federal Operations accepts statements or briefs in support of appeals by facsimile transmittal, provided they are not more than ten (10) pages long. Any statement or brief in opposition to your appeal must be submitted to the EEOC and served on you (or your attorney of record, if represented by an attorney) within thirty (30) calendar days of receipt of the statement or brief supporting the appeal, or if no statement or brief supporting the appeal has been filed, within sixty (60) calendar days of receipt of the appeal.

It is the responsibility of USDA to submit the entire complaint file to the EEOC, Office of Federal Operations, within thirty (30) calendar days of initial notification an appeal has been filed.

## CIVIL ACTION IN FEDERAL DISTRICT COURT

You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, you may do so:

1) within ninety (90) calendar days of receipt of this final decision if no appeal has been filed; or

2) within ninety (90) calendar days after receipt of the EEOC's final decision on appeal; or

3) after one hundred and eighty (180) calendar days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

You must name the person who is the official agency head or department head as the defendant. Agency or department means the national organization, and not just the local office, facility, or department in which you might work. Do not name just the agency or department. In your case, you **must** name **Brooke L. Rollins, Secretary of Agriculture,** as the defendant. You must also state the official title of the agency head or department head. Failure to provide the name or official title of the agency head or department head may result in dismissal of your case.

If you decide to file a civil action, under Title VII or under the Rehabilitation Act, and if you do not have or cannot afford the services of an attorney, you may request the Court appoint an attorney to represent you and the Court permits you to file the action without payment of fees, costs, or other security. **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and civil action MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS of the date you receive the final decision by USDA or an EEOC decision on appeal.

Unless an appeal is filed in the EEOC, failure to file a civil action within ninety (90) calendar days may result in the dismissal of your civil action. Filing a civil action under 29 C.F.R. § 1614.407 or § 1614.408 shall terminate processing an appeal before the EEOC. If a civil action is filed subsequent to filing an appeal with the EEOC, the parties are requested to notify the EEOC in writing.

THEODORE GUTMAN Digitally signed by THEODORE GUTMAN Date: 2026.06.17 07:59:28 -04'00'

Theodore H. Gutman
Associate Assistant Secretary for Civil Rights
Office of the Assistant Secretary for Civil Rights

Date

**U. S. DEPARTMENT OF AGRICULTURE**
**Office of the Assistant Secretary for Civil Rights**
**Complaint of Employment Discrimination**

Complainant: Shelly George

Complaint No.: FS-2025-00372

Agency: Forest Service

**Certificate of Service**

I certify the documents listed were sent on this date by email (unless otherwise specified) to:

Complainant: Shelly George
a2zsouth@gmail.com
Shelly.George@usda.gov

Complainant's Representative: Raymond Ufheil
ufheilraymond@yahoo.com

Agency Head: Tom Schultz
Chief
Forest Service
Tom.Schultz@usda.gov

Agency Liaison: Michole Wesley
Acting National Civil Rights Director
Civil Rights Office
Forest Service
Michole.Wesley@usda.gov

Enclosures: Final Decision
EEOC Form 573 (to Complainant and representative, if any, only)

Email by: GABRIELLE OGLESBY Digitally signed by GABRIELLE OGLESBY Date: 2026.06.17 11:15:47 -04'00'